Frank CHASE, Appellant,

v.

Richard CRISP, Warden of the
Oklahoma State Penitentiary,
et al., Appellees.

No. 74–1663.

United States Court of Appeals,
Tenth Circuit.

Argued May 19, 1974.

Decided Oct. 14, 1975.

Certiorari Denied March 1, 1976.
See 96 S.Ct. 1418.

David C. Vigil, Denver, Colo., for appellant.

Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl. (Larry Derryberry, Atty. Gen. of Oklahoma, Oklahoma City, Okl., on the brief), for appellees.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Frank Chase (Chase) appeals from the denial of his *pro se* application for writ of habeas corpus.

In 1970, Chase was convicted by a jury of the offense of possession of a firearm after former conviction of a felony. He was sentenced to ten years imprisonment in the Oklahoma State Penitentiary. On appeal to the Court of Criminal Appeals of Oklahoma, his sentence was modified to a term of five years and, as modified, affirmed. *Chase v. State*, 509 P.2d 171 (Okl.Cr.1973). The United States Supreme Court denied certiorari, three justices dissenting. *Chase v. Oklahoma*, 414 U.S. 1028, 94 S.Ct. 458, 38 L.Ed.2d 321 (1973).

On appeal, Chase contends that the trial court erred in denying his application for writ of habeas corpus: (1) in that there was insufficient evidence presented at the State trial to establish that he had previously been convicted of a felony; and (2) in finding harmless beyond a reasonable doubt the introduction at his trial of certain evidence inadmissible as the result of an illegal search and seizure.

## I.

■ The sole evidence presented by the prosecution at the State trial to establish that Chase had previously been convicted of a felony consisted of appearance docket sheets and copies of judgments and sentences evidencing previous felony convictions of one "Frank Chase". They were introduced into evidence following their identification by a deputy in the Court Clerk's office, the custodian of those records. Chase objects to this evidence because it was not introduced as part of the State's case-in-chief, relying upon *Marr v. State*, 513 P.2d 324 (Okl.Cr.1973); and further because there was no proof introduced—other than identity of names—to establish that these records were those of the defendant then on trial, i. e., Chase. His latter allegation does have merit. *See, United States v. McCray*, 468 F.2d 446 (10th Cir. 1972); *Matula v. United States*, 327 F.2d 337 (10th Cir. 1964); *Arriaga-Ramirez v. United States*, 325 F.2d 857 (10th Cir. 1963); *Gravatt v. United States*, 260 F.2d 498 (10th Cir. 1958). However, a careful review of the record convinces us that this issue was not properly presented to or decided by the court below.[1] Chase's petition for habeas corpus reads in pertinent part:

10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:

(a) "Illegal search and seizure—the merits of this question were not decided by guilt or innocence—it was not decided if the evidence obtained and used hereby was admissable."

(b) "enterducing [sic] other crimes—the records and facts considered did not support the appeals courts ruling."

(c) "Guilt or innocence has no bearing on admissability of evidence to determine said guilt or

---

1. While the State also contends that this issue was not presented to the State courts and hence State remedies have not been exhausted, we are unable to draw this conclusion from the record. In both his motion for a new trial (TR. Vol. II, p. 89) and his "Petition-In-Error" (TR. Vol. II), Chase listed as grounds: "7. Error in not proving After Former Conviction of a Felony as alleged in the information." It is not clear whether those allegations of error were premised on the same theory now advanced, i. e., failure of identification, or upon some other theory (e. g. at trial Chase's attorney objected that the "records" introduced were not the original and hence not the "best evidence" of the convictions). (TR. Vol. III, p. 73).

innocence. Therefor the merits of the question of illegal search and seizure were not determined in that state appeals court."

11. State concisely and in the same order the facts which support each of the grounds set out in (10):

(a) "The police entered my home without a search warrant looking for me and with no one home, the police went in and collected things that was [sic] used against me at my trial."

(b) "At my trial the state enterduced [sic] crimes of burglary, armed robbery, kidnapping, att. oral sodomy, assult [sic]."

While a strained reading of paragraph 10(b) might suggest the issue is now properly before us, Section 11(b) clearly reveals that Chase was objecting simply to the introduction of evidence of other crimes allegedly committed contemporaneously with the charge he was being tried on. In the District Court he did not challenge the sufficiency of the proof of the element of "former conviction of a felony."

 We are cognizant of our rulings that a *pro se* habeas corpus application should be given a liberal construction. *Miller v. Crouse,* 346 F.2d 301 (10th Cir. 1965); *McKinney v. Taylor,* 344 F.2d 854 (10th Cir. 1965). However, even by straining the words in this petition most favorably in Chase's behalf, we fail to find that this issue was presented for disposition to the Trial Court. Matters cannot be decided in the appellate court which were not raised in the tribunal from which the appeal was taken. *Hemphill v. Moseley,* 443 F.2d 322 (10th Cir. 1971); *Hoggatt v. Page,* 432 F.2d 41 (10th Cir. 1970); *Pope v. Turner,* 426 F.2d 783 (10th Cir. 1970). Nor is the doctrine of plain error applicable to raise the issue on appeal. *Pope v. Turner, supra.*

## II.

Chase contends that constitutional error, requiring reversal of the Trial Court's denial of his application for habeas corpus, was committed at his State trial by the introduction over his objection of certain evidence allegedly the fruit of an illegal search and seizure.

At trial, James Leland Johnston testified that he was a deputy sheriff of Muskogee County, Oklahoma; that on June 26, 1970, he was driving north of Warner, Oklahoma, when he stopped a car he had observed driving on the wrong side of the road; that defendant Chase got out of the stopped car, walked back to the deputy's car and showed Johnston his driver's license; that Chase and three other passengers from his car then overpowered Johnston and took his gun; that Chase and one of his companions forced Johnston to drive them in his car to Tulsa, Oklahoma, Chase riding behind Johnston in the back seat holding Deputy Johnston's .38 caliber revolver to the back of his head; that he was taken to a house in Tulsa where he was beaten; that he was then taken to a second house from which he was led to a railroad track where Chase, holding the same revolver on him ordered Johnston to commit oral sodomy; that Johnston refused and was again beaten; and that he was thereafter released.

Johnston further identified several of the State's exhibits including photographs of the first house, an item which looked like part of his gun handle, and a billfold with Chase's identification in it found under the back seat of Johnston's car by Johnston and his wife.

The State's other witness, Larry Johnson, testified that he was a detective corporal in the robbery-homicide detail of the Tulsa Police Department; that on June 29, 1970, acting on reliable information, he proceeded to the home of Frank Chase for the purpose of arresting him; that he did not have a search warrant; that upon arriving at the house he announced himself; received no answer and proceeded to enter the house looking for Chase; and that once inside the house he found the handle fragment, allegedly from Johnston's revolver. Johnson further described what he found in

the house and identified certain photographs of the inside of the house.

Chase did not testify or present any evidence in his own behalf.

■ Chase objects to the introduction of the evidence obtained during officer Johnson's warrantless search. Both the Court of Criminal Appeals of Oklahoma and the Federal District Court below found that even if this evidence was the fruit of an illegal search and seizure subject to suppression, its introduction was harmless beyond a reasonable doubt. We agree.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court addressed these remarks to the subject of when constitutional error may be held harmless:

> "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." . . . An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy*, be conceived of as harmless . . . *before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.* (Emphasis added).

386 U.S. 18 at 23–24, 87 S.Ct. at 827, 828.

*See also, Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *Martinez v. Turner*, 461 F.2d 261 (10th Cir. 1972); *Little v. Turner*, 402 F.2d 495 (10th Cir. 1968); 3 C. Wright, Federal Practice and Procedure, § 855 at 369–372 (1969).

■ While the test set out in *Chapman* is strict, the Supreme Court has not adopted the view that a departure from constitutional procedures should result in an automatic reversal. regardless of the weight of the evidence against the accused. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Where the weight of the properly admitted evidence is "overwhelming" and the prejudicial effect of the inadmissible evidence is insignificant by comparison, the error may be viewed as harmless. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California, supra; Carpenter v. United States*, 463 F.2d 397 (10th Cir. 1972), cert. denied, 409 U.S. 985, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972); *United States v. Kellerman*, 432 F.2d 371 (10th Cir. 1970).

■ In gauging the prejudicial effect of the admission of improper evidence or testimony, we must focus upon its probable impact upon the minds of "an average jury."

> Our judgment must be based upon our own reading of the record and on what seems to us to have been the probable impact . . . [of the inadmissible evidence] on the minds of an average jury.

*Harrington v. California, supra*, 395 U.S. at 254, 89 S.Ct. at 1728.

\* \* \* \* \* \*

> In this case, we conclude that the "minds of an average jury" *would not have found the State's case significantly less persuasive* had the testimony as to Snell's admissions been excluded. (Emphasis added).

*Schneble v. Florida, supra*, 405 U.S. at 432, 92 S.Ct. at 1060.

\* \* \* \* \* \*

> Our review of the record, however, leaves us with no reasonable doubt that the jury . . . *would have reached the same verdict* without hearing [the inadmissible testimony]. *The writ of habeas corpus has limited scope*; the federal courts do not sit to re-try state cases *de novo* but, rather, to review for violation of federal constitutional standards. In that process we do not close our eyes to the reality of overwhelming evidence of guilt fairly established . . . *by the use of evidence not challenged here*; the use of the additional evidence . .

was, beyond reasonable doubt, harmless. (Emphasis added).

*Milton v. Wainwright, supra,* 407 U.S. at 377–378, 92 S.Ct. at 2178.

With these principles in mind, we proceed to review the record before us.

■ Apart from the allegedly inadmissible evidence seized by the State from Chase's home, the State's case consisted of the eyewitness testimony of deputy Johnston, and its exhibit consisting of the billfold containing Chase's identification.[2] This evidence is not itself suspect, nor, standing unrebutted[3] supportive of any notion that the jury might reasonably have rejected it had it not been for the "added weight" of the "tainted evidence." In contrast, *Compare,* Justice Brennan's dissent in *Harrington v. California, supra* (Government's other "untainted" evidence was weakened by the fact that victim's identification was questionable and co-defendant's testimony implicating defendant was self-serving); Justice Marshall's dissent in *Schneble v. Florida, supra,* (there was evidence from which the jury could have concluded that the Government's other "untainted" evidence was itself the result of coercive police activities); *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), (only evidence implicating the defendant other than that illegally seized was his accomplice's testimony); *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), (the "other" evidence, consisting of the identification by defendant's victims, was questionable); *United States v. Sidman,* 470 F.2d 1158 (9th Cir. 1972), cert. denied, 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973), (other evidence consisting of eyewitness testimony was not strong).

Further, unlike the situation in *Fahy v. Connecticut, supra,* and in *Chapman, supra,* we note that here the State's case against Chase was not merely "woven from circumstantial evidence" but, rather, was supported by eyewitness testimony. *See, Harrington v. California, supra; United States v. Mancino,* 468 F.2d 1350 (8th Cir. 1972).

Finally, we think it significant to note that this allegedly "tainted" evidence was merely *cumulative* of other evidence

---

**2.** On appeal to the Court of Criminal Appeals of Oklahoma, Chase apparently dropped his trial objection that this too was the fruit of an illegal search. Any such contention would clearly have been without merit. *See, Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**3.** As noted above, Chase did not take the stand, did not raise the defense of alibi, and did not present any evidence in his own behalf. His sole rebuttal of the eyewitness testimony presented against him consisted of an attempt on cross-examination to raise doubts as to Johnston's opportunity to observe him. As evidenced by the following colloquy from the trial record, we do not think this amounted to a substantial challenge to that testimony in the minds of the jury:

Q. [Defense Counsel]: All right. After the car had stopped, after both cars had stopped, what happened?
A. [Johnston]: That's when the driver of their car got out and came back to my car.
Q. Who was that driver?
A. Frank Chase.

\* \* \* \* \* \*

Q. How good of a look did you get at Mr. Chase or whoever had that license?

A. Well, I was talking to him face to face in front of the headlights of my car.
(TR. Vol. III, p. 36)

\* \* \* \* \* \*

Q. After you were in the car, where was Mr. Chase sitting?
A. Directly behind the driver [Johnston].
Q. Would that have been out of the view through your rear-view mirror?
A. No, not from the inside rear-view mirror.
Q. If he was directly behind you, you were still able to see him through the rear-view mirror?
A. Yes, I could.
(TR. Vol. III, pp. 40–41).

\* \* \* \* \* \*

Q. Officer Johnston, I believe you testified that you were woozy at one time, that you were a bit dazed?
A. That's correct.
Q. Was that when you were in Tulsa County?
A. Oh, yes.
Q. And was that during the time alleged Mr. Chase had the gun?
A. No. It was before that that he had the gun.
(TR. Vol. III, p. 44)

**600**

properly presented to the jury. *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California, supra; United States v. Mancino, supra; Glazerman v. United States*, 421 F.2d 547 (10th Cir. 1970), cert. denied, 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 90 (1970); *Pinelli v. United States*, 403 F.2d 998 (10th Cir. 1968), cert. denied, 395 U.S. 968, 89 S.Ct. 2116, 23 L.Ed.2d 755 (1969).

Assuming, arguendo, that the challenged evidence was inadmissible, still, based upon our review of the whole record, we hold that any error arising from the use of this evidence was harmless beyond a reasonable doubt in that "an average jury" would not have found the State's case "significantly less persuasive" had the evidence been excluded. *See also, Kalmbach v. Jones*, 488 F.2d 134 (5th Cir. 1973), cert. denied, 417 U.S. 913, 94 S.Ct. 2614, 41 L.Ed.2d 218 (1974).

### III.

Finally, Chase alleges that the State Court's error in admitting the illegally seized evidence was "compounded" by the Court's receiving into evidence testimony relating to separate offenses allegedly committed by the defendant contemporaneously with the "possession" offense for which he was not then on trial (i. e., evidence that he had assaulted, kidnapped, robbed and attempted oral sodomy with Johnston).

We fail to see how the latter alleged error "compounds" the former.

Further, even assuming that the introduction of evidence as to "other crimes" constituted error standing on its own,[4] we hold that, considering the record as a whole, in light of the strong evidence of Chase's guilt—apart from the evidence allegedly illegally seized—the error, if any, in the admission of this evidence was not so prejudicial as to deny him the right to due process and a fair trial.[5] *Young v. Anderson*, 513 F.2d 969 (10th Cir. 1975).

Affirmed.

**4.** While the Court of Criminal Appeals of Oklahoma assumed without discussion that the introduction of evidence of these "other crimes" *was error*—though not grounds for reversal under the particular circumstances of this case—we are not so convinced. Where all of the acts are connected to the chain of events of which the crime charged is a part, all are admissible even though the full story tends to show the commission of other offenses. *United States v. Roe*, 495 F.2d 600 (10th Cir. 1974), cert. denied, 419 U.S. 858, 95 S.Ct. 107, 42 L.Ed.2d 92; *United States v. Waldo*, 470 F.2d 1359 (10th Cir. 1972). Competent and relevant evidence of guilt is not inadmissible because it tends to show the commission of another offense. *Downey v. United States*, 263 F.2d 552 (10th Cir. 1959).

**5.** This is the same conclusion reached by the Oklahoma Court of Criminal Appeals. See *Chase v. State, supra.*

We further find it significant that the State Trial Court instructed the jury not to consider any facts tending to prove any other crime, and that this instruction was emphasized to the jury by defense counsel in closing argument. TR. Vol. III at 62–63. It is presumed that jurors will be true to their oath and will conscientiously observe the instructions and admonitions of the Court. *Ellis v. State of Oklahoma*, 430 F.2d 1352 (10th Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971); *Baker v. Hudspeth*, 129 F.2d 779 (10th Cir. 1942), cert. denied, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546 (1942).