Jackie Ray SHAW, Petitioner-Appellant,

v.

Jerry JOHNSON, Respondent-Appellee.

No. 85–1168.

United States Court of Appeals,
Tenth Circuit.

March 17, 1986.

Gary Peterson, Oklahoma City, Okl., for petitioner-appellant.

David W. Lee, Asst. Atty. Gen., Chief, Crim. & Federal Divs. (Michael C. Turpen, Atty. Gen. of Okl., with him, on brief), Oklahoma City, Okl., for respondent-appellee.

Before MOORE and McWILLIAMS, Circuit Judges, and CHILSON, District Judge.*

McWILLIAMS, Circuit Judge.

Pursuant to the provisions of 28 U.S.C. § 2254, Jackie Ray Shaw, a state prisoner, filed an application for habeas corpus in the United States District Court for the Western District of Oklahoma. Shaw named as the respondent Tim West, his custodian at the Conner Correctional Center, Hominy, Oklahoma. In his petition, Shaw alleged that his conviction on a robbery charge in an Oklahoma state court violated rights guaranteed him by the United States Constitution. Based on the record as made, the district court denied the petition and entered judgment to that effect. Shaw appeals. We affirm.

* Honorable Hatfield Chilson, United States District Judge for the District of Colorado, sitting by designation.

By information, Shaw, and three others, were charged in the district court in and for Oklahoma County, State of Oklahoma, with the armed robbery of a pawnshop operator on November 14, 1978, in violation of Okla.Stat. tit. 21, § 801 (1981) (amended in ways immaterial to this case by 1982 Okla.Sess.Laws ch. 173, § 2). In the same information, Shaw was separately charged with having suffered four felony convictions prior to the time he allegedly robbed the pawnshop operator. It was alleged that Shaw had suffered four previous felony convictions as follows: (1) the crime of concealing stolen property on December 28, 1971, in the District Court of Oklahoma County, State of Oklahoma; (2) the crime of uttering a forged instrument after former conviction of a felony on April 8, 1974, in the District Court of Oklahoma County, State of Oklahoma; (3) the crime of burglary in the second degree after former conviction of a felony on June 16, 1975, in the District Court for Oklahoma County, State of Oklahoma; and (4) the crime of assault with a deadly weapon with intent to kill after former conviction of a felony on June 16, 1975, in the District Court of Oklahoma County, State of Oklahoma. Shaw pled not guilty to the robbery charge and denied any prior felony convictions. A bifurcated trial by jury ensued in March of 1979. *See* Okla.Stat. tit. 22, § 860 (1981) (establishing procedure for bifurcated trials in habitual offender cases).

On the robbery charge, the State's evidence was that Shaw and three others, all armed, entered a pawnshop and forcibly took from the pawnshop operator money, jewelry and a pistol. During the robbery two shots were fired, one of which went through the coat of the pawnshop operator and buried itself in a gun cabinet. The four robbers successfully fled the scene. Two days later, however, Shaw was arrested while driving an automobile in Oklahoma City. At the time, Shaw was wearing two rings which the pawnshop operator testified were of the type taken in the

robbery. Additionally, the arresting officer testified that as she was effecting the arrest she noticed that the driver, who was Shaw, threw two objects to the ground. These two objects, which were also rings, were retrieved and identified at trial by the pawnshop operator as being of the type taken in the robbery. Finally, the arresting officer testified that a loaded .32 calibre chromeplated revolver, which was in plain view on the front seat, was seized and, at trial, the pawnshop operator testified it was similar to the revolver that had been placed next to his head by one of the robbers during the robbery. The pawnshop operator testified at length concerning the details of the robbery and identified Shaw as one of the four robbers.

Shaw exercised his right not to testify at trial. However, Shaw offered the defense of alibi. His counsel, in his opening statement made immediately after the prosecutor's opening statement, stated that this was simply a case of "mistaken identity." In support of his alibi defense, Shaw called a relative and a couple of friends who testified concerning Shaw's whereabouts at the time of the robbery, which testimony, if believed, would indicate that Shaw was not one of the robbers. One of these witnesses also testified that she had purchased from a person named Gary the rings which Shaw possessed at the time of his arrest.

The jury convicted Shaw on the robbery charge, and the same jury, immediately thereafter, proceeded to try Shaw on the charge that he had previously suffered felony convictions and to then fix his sentence.[1] In this regard, the prosecution offered four certified copies of the judgment and sentence imposed in each of the four convictions listed above. In connection with the 1971 conviction for concealing stolen goods, the prosecution called a police officer who testified that the Shaw who had just been convicted of the armed robbery of the pawnshop operator was the same Shaw who suffered the 1971 convic-

---

1. In Oklahoma, criminal defendants have the right to have a jury fix their sentences once convicted. Okla.Stat. tit. 22, § 926 (1981).

tion for concealing stolen goods. No such witness was called, however, in connection with the three convictions allegedly suffered by Shaw in 1974 and 1975. The certified copies of these last three convictions were received in evidence over the objection that there was no evidence that the Shaw who suffered those particular convictions was the same Shaw convicted of armed robbery. Shaw called no witnesses on his behalf in this proceeding. The jury returned a verdict finding that Shaw had been convicted of *one* prior felony, and fixed his punishment at life imprisonment.

On appeal to this Court, Shaw argues that his federal due process rights were violated in the state court proceedings in what are basically three particulars: First, Shaw asserts that the instruction to the jury, that "fear is presumed" when a robbery is committed by use of a firearm, created an unconstitutional presumption as to a material element of the crime; second, Shaw argues the Oklahoma court of criminal appeals unconstitutionally denied Shaw of his right to have a jury resentence him when that court found that the jury had been erroneously instructed as to the minimum number of years Shaw could receive; and third, Shaw argues that the evidence that he suffered *any* prior felony conviction is legally insufficient to sustain his recidivism conviction. We shall consider each *seriatim.*

I. The "Fear is Presumed" Instruction

As stated, one instruction, to which no objection was made at trial, was to the effect that "fear is presumed" when a robbery is committed by use of a firearm. Though not an issue in the state trial court, on appeal to the Oklahoma Court of Criminal Appeals, Shaw argued that the "fear is presumed" instruction was unconstitutional under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), in that, in practical effect, it required the jury to "presume" an essential element of the crime charged. The Oklahoma Court of Criminal Appeals rejected this argument, noting that it was never raised in the trial court and observing that, in any event,

"fear" is not an essential element of the crime of robbery with a firearm as provided for in Okla.Stat. tit. 21, § 801 (1981) (amended by 1982 Okla.Sess.Laws ch. 173, § 2).

The Oklahoma statutes define robbery as the wrongful taking of personal property in the possession of another "by means of force *or* fear" (emphasis added). Okla. Stat. tit. 21, § 791 (1981). So, it would appear that under the statute, the State need only prove alternatively "force" or "fear." In this regard, the information charged, *inter alia,* that Shaw and his co-defendants produced "great fear of immediate injury" in the mind of Jack Henderson, the pawnshop operator. While the information itself did not use the word "force," nonetheless the information did charge that the defendants, armed with three small handguns and a sawed-off shotgun, made "threats of immediate death" which created fear in the mind of Jack Henderson, all of which is a way of charging that the defendants used "force" which caused fear.

In this federal habeas corpus proceeding, Shaw argues that the "fear is presumed" instruction is unconstitutional under *Sandstrom.* The trial court rejected this argument. We conclude that the trial court correctly ruled that *Sandstrom* does not require granting federal habeas relief to Shaw.

In *Sandstrom,* the defendant was charged in a state court of Montana with "deliberate homicide." At trial, the defendant's counsel admitted the killing, but denied that it was deliberate. In this setting, the jury was instructed, at the conclusion of all the evidence, that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Defense counsel objected to this instruction on the ground that the instruction had the effect of shifting a burden of proof on the issue of deliberateness to the defendant and that such was impermissible under federal due process. This objection was overruled by the trial court. On appeal, the Supreme Court of Montana affirmed the conviction.

On certiorari, the Supreme Court reversed and held that the instruction is unconstitutional inasmuch as the due process clause protects the accused in a criminal case from conviction unless there be *proof*, beyond a reasonable doubt, of every *fact* necessary to constitute the crime with which he is charged. The Supreme Court declined to consider whether such error was harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), noting that such had not been considered by the Supreme Court of Montana. *Sandstrom,* 442 U.S. at 526–27, 99 S.Ct. at 2460. We believe *Sandstrom* to be quite different from the instant case, however. Concerning Shaw's challenge of the "fear is presumed" instruction, our study of the matter leads us to conclude that any possible error, error which we fail to perceive,[2] is "harmless error."

■ No objection was made to the trial court by counsel to the "fear is presumed" instruction. In point of time, *Sandstrom* was not announced until after Shaw's trial. Be that as it may, the unconstitutional instruction in *Sandstrom* concerned a material element of the crime charged. This element was the central, indeed the only, issue in the case, i.e., the defendant's state of mind at the time of the killing. In the instant case, the issue of "force" or "fear" was a non-issue. Shaw's defense was "alibi," i.e., he did not participate in the robbery, not that he participated in the robbery but didn't use force and created no fear in the victim. That defense counsel did not make an issue of "force" or "fear" is not surprising in view of the uncontroverted evidence that both force *and* fear were employed in the commission of the crime: four persons, each with a loaded gun, took money and jewelry from the vic-tim during the course of which two shots were fired, one going through the victim's coat. No defense counsel would, in the face of such evidence, even think of making force or fear an issue in the case. In this setting, any error in the "fear is presumed" instruction, in our view, is "harmless error."

As indicated, in *Sandstrom* the Supreme Court left open the question of whether there can be harmless error even where the erroneous instruction bears on a material and controverted issue in the case. The Supreme Court in *Connecticut v. Johnson,* 460 U.S. 73, 87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983), recognized that where, for example, the defense is alibi, a defendant in a given case might, by so doing, admit an essential element of the crime charged to the end that an erroneous instruction relating to a non-contested issue might be "harmless error." *See also Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985) (the Supreme Court determined that it need not, in that case, resolve the question of whether an erroneous instruction that shifts the burden of persuasion to a defendant on an essential element of an offense can ever be harmless). As indicated, we believe any error in the instant case in this regard was patently harmless error.

## II. The *Hicks* Matter

As stated, Shaw was first convicted by the jury of armed robbery in violation of Okla.Stat. tit. 21, § 801. The penalty for that crime was imprisonment for no less than five years nor more than life. Shaw was also charged by the State of Oklahoma with four prior felony convictions. In this connection, the jury was instructed[3] that if the jury found that Shaw had previously

---

2. We perceive a "rational connection" between the basic facts that the prosecution proved in the instant case, i.e., the use of four loaded weapons with two shots being fired, and the ultimate fact presumed, i.e., fear. *Ulster County Court v. Allen,* 442 U.S. 140, 163–67, 99 S.Ct. 2213, 2227–30, 60 L.Ed.2d 777 (1979). However, since any possible error is, in our view, harmless, there is no need to get into an extended analysis of the instruction and its constitu-tionality under *Sandstrom,* or consider possible differences between mandatory or permissive presumptions. To argue, as no one has, that in the instant case there was not, in fact, both force *and* fear is, of course, ludicrous.

3. As noted above, *see supra* note 1, criminal defendants in Oklahoma have the right to have their sentences set by a jury.

suffered one felony conviction, the sentence must be no less than twenty years and no more than life, but that if the jury found that the State had failed to prove any prior felony conviction, then the sentence should be not less than five years nor more than life. No objection was made to this instruction. Defense counsel, in closing argument to the jury in the sentencing trial, argued that twenty years, under the circumstances, was too long, but necessarily argued, and vigorously so, that the jury should fix Shaw's punishment at twenty years, and no more. Conversely, the prosecutor urged the jury to fix Shaw's punishment at life imprisonment. By its verdict, the jury rejected the argument of Shaw's counsel for a twenty-year sentence and followed the urging of the prosecutor, fixing Shaw's punishment at life imprisonment.

It later developed that the trial court, as well as all of counsel, were laboring under a misapprehension as to the minimum sentence which could be imposed if the jury found that Shaw had suffered one prior felony conviction. Instead of being a twenty-year minimum, as the jury was instructed, the actual minimum then permitted by statute was ten years. Okla.Stat. tit. 21, § 51(A) (1981) (amended in a manner immaterial to this case by 1985 Okla.Sess.Laws ch. 112, § 3). On appeal, the Oklahoma Court of Criminal Appeals recognized that misstatement, and, acting under its discretionary power to reduce the sentence imposed in trial court, reduced the life sentence to forty-five years. *Shaw v. Oklahoma*, No. F–79–550, slip op. at 5 (Okla. Crim.App. July 21, 1981).[4] Shaw, in this federal habeas proceeding, asserts that this error in the sentencing jury instruction is constitutional error. He argues that under the circumstances, the Oklahoma Court of Criminal Appeals should have remanded the case to the trial court for a new resentencing trial where the jury would be properly instructed as to the correct minimum sentence which could be imposed, i.e., ten years and not twenty. In thus arguing,

Shaw relies on *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). We do not believe that *Hicks* mandates a reversal in the present case.

In *Hicks*, the jury was instructed that if they found the defendant guilty of unlawfully distributing heroin, he *must* be sentenced to forty years imprisonment (no more, no less) since he had been convicted of felony offenses twice within the preceding ten years. The jury found Hicks guilty and, in accord with the instruction, fixed his punishment at forty years.

Subsequent to Hicks' conviction, the Oklahoma Court of Criminal Appeals, in another case, declared one provision of the habitual offender statute, under which Hicks' mandatory forty-year prison term had been imposed, unconstitutional. *Thigpen v. State*, 571 P.2d 467 (Okla.Crim.App. 1977). However, when Hicks appealed his conviction, the Oklahoma Court of Criminal Appeals affirmed his sentence, reasoning that Hicks was not prejudiced since his sentence was within the range of punishment that could have been imposed had the jury been instructed under the valid remaining provision of the habitual offender statute.

On certiorari, the Supreme Court in *Hicks* reversed, holding that the "possibility ... is thus substantial" that the jury would have fixed Hicks' sentence at less than forty years if they had not been instructed that the only sentence which could be imposed was the mandatory forty years. 447 U.S. at 346, 100 S.Ct. at 2229.

■ In our view, *Hicks* is different from the instant case. In *Hicks*, the jury was instructed that the only sentence they could impose was forty years. If they had not been so instructed, they might well have come in with a lesser sentence. In our case, it is unlikely that the sentencing error had any effect on Shaw's sentence. The jury was instructed that the range of punishment which could be imposed was from twenty years to life. The jury reject-

---

**4.** The Oklahoma Court of Criminal Appeals has statutory power to modify sentences. Okla.Stat. tit. 22, § 1066 (1981).

ed the argument of defense counsel that they give Shaw a twenty-year sentence and, instead, imposed the maximum sentence allowable, i.e., life. It is pure speculation that the jury would have imposed something less than life imprisonment had it been properly instructed that the minimum possible sentence was ten years, and not twenty. The "possibility" that Shaw would have received a lesser sentence is certainly not, in our view, "substantial." The jury flatly rejected the suggestion of Shaw's counsel that a twenty-year sentence be imposed. In such circumstance, it is difficult for us to perceive how a plea by counsel for a ten-year sentence would have been accepted by that jury or would have otherwise affected its ultimate verdict. *See Hill v. Estelle*, 653 F.2d 202, 205 (5th Cir.), *cert. denied*, 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1981) (error in minimum possible sentence did not implicate *Hicks* when actual sentence given was large enough to show that error did not prejudice defendant).[5]

■ As a variation of the *Hicks* argument, counsel argues that the Oklahoma

Court of Appeals had no authority to reduce Shaw's sentence from life to forty-five years, and that such interfered with Shaw's statutory right to have a jury fix his sentence. It is true that under Oklahoma law a jury, in the first instance, fixes the sentence of one convicted of a felony. Okla. Stat. tit. 22, § 926 (1981). At the same time, Oklahoma statutes also provide that an appellate court may, on appeal, modify a sentence which, in the first instance, has been fixed by a jury. Okla.Stat. tit. 22, § 1066 (1981).[6] Applied to the instant case, a jury did fix Shaw's sentence, at the maximum allowed by statute, and the Oklahoma Court of Criminal Appeals, acting under its discretionary statutory authority, reduced the sentence fixed by the jury. Such is permissible under Oklahoma law and does not, in our view, offend the federal constitution in any manner.[7]

### III. Evidence of Prior Convictions

As above mentioned, the State, at the sentencing trial, offered certified copies of the judgments and sentences imposed in

---

5. Shaw raises a procedural due process argument related to his *Hicks* claim, that is, that he was denied his constitutional right to notice and an opportunity to be heard before he was resentenced. This same argument apparently was raised in the *Hicks* case, but the Supreme Court expressly declined to address it. 447 U.S. at 347 n. 5, 100 S.Ct. at 2230 n. 5. This argument would have some potential merit if the Oklahoma Court of Criminal Appeals vacated Shaw's sentence and did in fact resentence him. To pass muster under *Hicks*, however, the Oklahoma court had to give effect to the jury's verdict, and indeed implicitly conclude that the jury likely would not have given a lower sentence had the jury been properly instructed. Thus, the Oklahoma court did not resentence Shaw; it affirmed the sentence imposed by the jury but modified it to account for an error which likely had no effect on the jury's decision.

6. The Tenth Circuit recognized the apparent tension between § 926 and § 1066 in *Drennon v. Hess*, 642 F.2d 1204, 1205 (10th Cir.1981). *Drennon* was the first case in which this court was called upon to decide whether *Hicks* required a jury resentencing when a sentencing error occurred at trial. The Tenth Circuit then chose, however, to remand the issue back to the Oklahoma courts for further definition without ruling on the merits.

7. In *Hicks*, Justice Stewart, writing for the majority, emphasized that the liberty interest warranting protection in *Hicks* was the right to have a jury set the *maximum* sentence an Oklahoma criminal defendant could receive: "It appears that the right to have a jury fix the sentence *in the first instance* is determinative, at least as a practical matter, of the *maximum sentence* that a defendant will receive." 447 U.S. at 347, 100 S.Ct. at 2230. If the erroneous instruction used to sentence Shaw would likely have affected the maximum sentence given by the jury, *Hicks* would clearly require granting Shaw's habeas petition. But the jury's determination that Shaw receive life imprisonment strongly indicates that the 10-year error in the jury instruction pertaining to the minimum sentence Shaw could receive had little effect on the jury's decision. Under Justice Stewart's rationale, therefore, Shaw was given all the process due him when he was afforded the right to have a jury determine his maximum sentence. *See Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973) (erroneous jury instruction can give rise to federal habeas relief only if it is so egregious as to violate due process).

each of the four felony convictions which the State alleged Shaw had previously suffered. In these certified copies, the defendant in each case was identified as "Jackie Ray Shaw," and each conviction was in Oklahoma County, State of Oklahoma, which county, according to defense witnesses called in the trial on the armed robbery charge, was Shaw's place of residence. The State called a police officer who identified Shaw as the person who suffered the 1971 conviction for receiving stolen goods, but did not call any witness to offer similar testimony concerning the other three convictions.

In the present federal habeas corpus proceeding, Shaw argues that the evidence was legally insufficient to establish, *prima facie*, that he had suffered *any* prior conviction. In connection with the 1971 conviction, Shaw concedes that the State established, *prima facie*, that it was he who suffered that particular conviction, but argues that the conviction itself is invalid.[8] Concerning the other three convictions, Shaw argues that certified copies of judgments and sentences were insufficient to establish, *prima facie*, that he was the same person suffering those convictions, and that such is violative of due process. We shall consider these two arguments in reverse order since if there is sufficient evidence to establish *prima facie*, that it was Shaw who suffered the three convictions in 1973 and 1975, the issue as to whether his conviction in 1971 as a juvenile was constitutionally sound becomes moot.

Insofar as federal crimes are concerned, we have held that the United States does not discharge its burden of proving a prior conviction by merely introducing court records pertaining to a person of the same or similar name, and that such record must be supported by some independent evidence tending to support its trustworthiness in order to become "sufficient in law." *United States v. Kilburn*, 596 F.2d 928, 935 (10th Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979); *Matu-*

*la v. United States*, 327 F.2d 337 (10th Cir.1964); *Gravatt v. United States*, 260 F.2d 498, 499 (10th Cir.1958). However, under Oklahoma law, it is well established that a prior felony conviction may be established by documentary evidence alone, if the name on the certified copy of the judgment and sentence is identical to that of the defendant. In other words, identity of name is, *prima facie*, identity of person. *Wilson v. State*, 568 P.2d 1323, 1327 (Okla. Crim.App.1977); *Louder v. State*, 568 P.2d 344, 349 (Okla.Crim.App.1977); *Williams v. State*, 364 P.2d 702, 704 (Okla.Crim.App. 1961). So, the question is whether constitutional due process requires that the federal rule be applied in a state which requires a lesser degree of proof in order to establish, *prima facie*, a prior felony conviction. We believe the answer to this question is contained in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

In *Spencer*, on direct appeal, three convicted recidivists challenged the State of Texas' procedures used to convict them as habitual criminals. Unlike Oklahoma, Texas had but one trial for both the current charge and the additional charge that the defendant in the pending case had suffered prior felony convictions. The principal challenge in *Spencer*, unlike our case, was whether a bifurcated trial was constitutionally required in light of the serious potential prejudice that proof of recidivism might inject into the trial on the principal charge. Nevertheless, in upholding the Texas procedure, the Supreme Court commented that the federal courts are not a rule-making organ for the promulgation of state rules of criminal procedure. 385 U.S. at 564, 87 S.Ct. at 653. The court in *Spencer* quoted with approval Justice Cardozo that a state rule of criminal procedure " 'does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.' *Snyder v. Massachusetts*, 291 U.S.

---

8. The basis for the challenge was that juvenile men were treated differently at the time from juvenile women. Men were automatically tried and convicted as adults, while women could be treated as juveniles. This different treatment, Shaw alleges, denied him equal protection of the laws.

97, 105 [54 S.Ct. 330, 332, 78 L.Ed. 674]." *Id.*

■ Applying the rationale of *Spencer* to the instant case, the Oklahoma rule that documentary evidence, standing alone, may establish, *prima facie,* the fact of a prior felony, does not "run afoul" of the federal constitution so as to warrant federal habeas relief.[9] In the instant case, we had the identity of name, "Jackie Ray Shaw," with all convictions arising out of Oklahoma County, State of Oklahoma, the residence of *the* Jackie Ray Shaw who was convicted of the armed robbery of the pawnshop operator. In our view, such evidence, in nowise rebutted, is sufficient to justify a rational trier of the fact to find, beyond a reasonable doubt, that Jackie Ray Shaw had suffered a prior felony conviction. *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1978) (establishing standard for federal habeas review of sufficiency of evidence in state trials). *See also Williams v. Duckworth,* 738 F.2d 828, 831–32 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1229, 84 L.Ed.2d 367 (1985) (applying *Jackson* to sufficiency of proof of state recidivism conviction; notes that *Jackson* standard is to be applied to elements of crime of recidivism as defined by the state);[10] *McGee v. Estelle,* 732 F.2d 447, 451 (5th Cir.1984) (also applying *Jackson* standard to review sufficiency of proof of recidivism conviction). We, therefore, find no constitutional violation.[11]

In light of this holding, we have no need to address the propriety of the state's use of Shaw's 1971 conviction.

Judgment affirmed.

---

**9.** Shaw facially challenges Oklahoma's practice of proving recidivism. To grant him habeas relief on this basis would require this court to pass judgment not only on Oklahoma's criminal procedural rules, but also on other states' rules which permit proof of previous crimes by only documentary evidence. For example, the State of Nevada also permits prior convictions to be proven by documentary evidence alone. Nev. Rev.Stat. § 207.010(8) (1985). *See McGarry v. Fogliani,* 370 F.2d 42, 43–44 (9th Cir.1966) (apparently upholding validity of Nevada's habitual offender statutory scheme in habeas challenge). *Cf. Christopher v. Florida,* 582 F.Supp. 633, 639–40 (S.D.Fla.1984) (in habeas proceeding, court vacated stay of execution, *inter alia,* on ground that state court reliance on court documents alone to evidence prior crime did not violate Constitution; fact of commission of prior crime was used to support finding of aggravation which in turn was used to support death sentence). It would be presumptuous of this court, without any guidance from either the Supreme Court or sister circuit, to facially invalidate the state court practice of proving the commission of previous crimes by documentation certified by the appropriate authorities.

**10.** The court in *Duckworth* ruled that the recidivist conviction was constitutionally invalid. The court did so, however, only after finding that no rational trier of fact could conclude that all the elements of recidivism, as defined by the state, had been proven beyond a reasonable doubt. 738 F.2d at 832.

**11.** *Chase v. Crisp,* 523 F.2d 595, 596 (10th Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976), contains language which might indicate that reliance on documentary evidence alone to establish a prior felony conviction in a state criminal proceeding does not afford the defendant federal due process. However, that was not the holding in *Chase,* this Court declining to decide the issue because it had not been presented to the trial court. We believe that, based upon the Supreme Court's rationale articulated in *Spencer,* the federal courts do not have the authority to constitutionally condemn the State of Oklahoma's practice of *prima facie* establishing the fact of commission of previous crimes by documentary evidence alone.