59 F.3d 179
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin E. GOLDEN, Defendant-Appellant.
 Nos. 94-7105, 94-7112, 94-7113.
 United States Court of Appeals, Tenth Circuit.
 June 30, 1995.
 ORDER AND JUDGMENT[1]
 
 1
 Before SEYMOUR, Chief Judge, MOORE, Circuit Judge, and BROWN, District Judge.[2]
 
 MOORE.
 
 2
 Marvin Golden appeals his conviction after a jury trial on three counts of firearm charges. Concluding the district court committed no error, we affirm.
 
 
 3
 On April 23, 1993, shortly before 11:00 p.m., a Domino's Pizza in Ada, Oklahoma, was robbed at gunpoint. The employees reported the crime to the Ada Police Department and described the perpetrator as a black male, six feet tall, with straight frizzy hair, 28-32 years old, weighing 190 pounds, wearing a black or dark bandana, and carrying a small caliber chrome-plated handgun. The employees stated the property taken was approximately $400 in cash and checks stuffed in a brown paper sack. They described a dark colored 1978-82 model Cadillac leaving the scene.
 
 
 4
 The Ada police put out a broadcast for a black male about six feet, medium build, driving an older black Cadillac as wanted in connection with the robbery. Oklahoma Highway Patrol Trooper Chris Anderson heard the broadcast. He was north of town and knew that the only way to reach Interstate 40, a major thoroughfare to the north, from Ada was U.S. Highway 377, a rural road with little traffic at that time of night. Trooper Anderson turned south on Highway 377. Approximately forty minutes after the robbery and twenty-two miles from the Domino's Pizza, he saw a car with Cadillac taillights heading north.
 
 
 5
 Trooper Anderson turned around and followed the Cadillac, but he was unable to see the occupants of the car. He called in the license plate, and found the car was not stolen and there were no outstanding warrants. As he got closer to the back of the car, he noticed it was "dark gray," not black. He radioed that he was stopping the car in connection with the broadcast.
 
 
 6
 Trooper Anderson stopped the Cadillac and got out with his sidearm drawn. The driver also got out, and Trooper Anderson asked for his driver's license. The driver complied and Trooper Anderson holstered his weapon. Trooper Anderson shone his flashlight at the car and noticed there was a woman in the passenger seat and some sacks and a chrome handgun in the back seat. He again drew his weapon and began to handcuff the driver. While doing so, he saw the female passenger reach toward the gun on the back seat. He ordered her to put her hands on the windshield, and she complied.
 
 
 7
 Subsequently, policemen arrested both the driver, defendant Marvin Golden, and the passenger, and searched the car to discover a black bag containing clothing and a pair of gloves later identified as clothing worn by the robber, and a large amount of cash, approximately equal to the amount stolen. In custody, Mr. Golden confessed to the crime.
 
 
 8
 Mr. Golden was convicted after a jury trial on all three counts of the indictment against him: (1) possession of a firearm after former conviction of a felony in violation of 18 U.S.C. 922(g)(1) and 924(a)(2); (2) possession of a firearm with an altered serial number in violation of 18 U.S.C. 922(k); and (3) using or carrying a firearm during the commission of a crime of violence (armed robbery) in violation of 18 U.S.C. 924(c)(1).
 
 I.
 
 9
 On appeal, Mr. Golden argues the trial court improperly admitted the evidence seized from the car in violation of the Fourth Amendment. He argues Trooper Anderson had no probable cause to stop the car. The standard of review for application of the Fourth Amendment is de novo. United States v. Gonzalez-Acosta, 989 F.2d 384, 387 (10th Cir.1993).
 
 
 10
 We conclude the district court did not err because the officer was merely conducting a Terry[3] stop when he pulled Mr. Golden's vehicle to the side of the road. Trooper Anderson's stop of the Cadillac was brief. When Trooper Anderson saw the gun, which Mr. Golden apparently does not dispute was in plain view, see Horton v. California, 496 U.S. 128 (1990) (three-part test for plain view doctrine), all he had done was ask for Mr. Golden's license and shine his flashlight in the car. Although the act of drawing the gun when Trooper Anderson first stopped the car is more intrusive, he almost immediately holstered his weapon when Mr. Golden complied with his request for the license. When Trooper Anderson saw the gun on the back seat, his weapon was holstered. We conclude Trooper Anderson had a reasonable suspicion supported by specific and articulable facts to support a Terry stop: the direction, location, and description of the car. Once Trooper Anderson saw the gun, he had probable cause to seize it. It is illegal to carry a loaded pistol in the passenger compartment of an automobile in Oklahoma. Okla. Stat. Ann. tit. 21, 1289.13. Trooper Anderson also had probable cause to search the car in connection with the robbery.[4] Having reached this conclusion, we need not address the other issues raised by the parties in connection with the removal of items from the car.
 
 II.
 
 11
 Conviction of a past felony is an element of possession of a firearm after former conviction of a felony in violation of 18 U.S.C. 922(g)(1). Thus, the government was required to prove Mr. Golden had been convicted of a crime carrying a prison term exceeding one year. See United States v. Shunk, 881 F.2d 917, 921 (10th Cir.1989). Tenth Circuit law requires both that the government prove a conviction of a person with the defendant's name and that it introduce additional "independent evidence tending to support its trustworthiness...." Shaw v. Johnson, 786 F.2d 993, 999 (10th Cir.), cert. denied, 479 U.S. 843 (1986).
 
 
 12
 At trial, Mr. Golden refused the government's offer to stipulate that he had been convicted of a prior felony, aggravated armed robbery, in Texas. In anticipation of the government's response to this refusal, counsel for the defendant requested the district court to instruct the prosecution "to only offer the verbal testimony that he has--that he is a prior convicted felon and refrain from identifying what that felony is." Counsel explained the request stating the conviction was for aggravated robbery and "we feel it will be prejudicial."
 
 
 13
 The government, in response, stated Mr. Golden's unwillingness to stipulate left the prosecution no choice but to offer the physical evidence of his prior conviction. Agreeing with the government that defendant could not "have it both ways," the court denied the defense request.
 
 
 14
 Ultimately, the government introduced a "pen pack," or penitentiary pack from the state of Texas, which included a fingerprint card bearing Mr. Golden's fingerprints to prove his identity. Mr. Golden's only objection to the receipt of the pen pack was "no proper foundation." He did not assert prejudice as he had when he requested a limitation in the presentation of evidence. Moreover, Mr. Golden requested no contemporaneous limiting instruction, although in its general charge the court instructed the evidence was to be considered only for the "limited purpose of proving ... an essential element of the offense charged against him in count 1."[5]
 
 
 15
 Assuming the issue has been preserved despite the lack of an objection at the time of introduction, we see no error here. First, we review alleged error in the admissibility of evidence for abuse of discretion. United States v. Joe, 8 F.3d 1488, 1492 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1236 (1994). Mr. Golden has not demonstrated the court abused its discretion. Indeed, this is a specious issue because Mr. Golden's prior conviction was not in controversy. In reality, Mr. Golden's refusal to stipulate was futile. This futility was obviously noted by the district court; therefore, in this context it is impossible to see any abuse of discretion in the court's ruling.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Wesley E. Brown, Senior Judge for the United States District Court for the District of Kansas, sitting by designation
 
 
 [3]
 Terry v. Ohio, 392 U.S. 1 (1968)
 
 
 [4]
 These facts are in stark contrast to those in United States v. Jones, 998 F.2d 883 (10th Cir.1993), making that case inapposite
 
 
 [5]
 When jurors are given such an instruction, they are presumed to have followed it. United States v. Carter, 973 F.2d 1509, 1513 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1289 (1993)