### R. T. McCAMON v. JAMES STAGG.
#### No. 62.

REAL ESTATE—*Accretions Formed by River.*   Where two irregular pieces of ground lie upon the north side of the Kansas river, at a point where the course of the river is southeast, and are separated from each other by a half quarter-section line, running north and south, the accretions formed by the recession of the river to the south belong to the respective tracts of land lying immediately north thereof, and the division line between the two tracts continues to be the half quarter-section line extended.

MEMORANDUM.—Error from Riley district court; R. B. SPILMAN, judge.   Action of ejectment brought by James Stagg against R. T. McCamon.   Judgment for plaintiff.   Defendant brings the case here.   Affirmed.   The material facts are stated in the opinion herein, filed January 9, 1896.

*John E. Hessin,* for plaintiff in error.

*Kimble & Brock,* for defendant in error.

The opinion of the court was delivered by

CLARK, J. :   This action was brought in the district court of Riley county by James Stagg to recover from R. T. McCamon a small tract of land embracing about 8¼ acres lying south of a line running east and west

equi-distant from the northern and southern bound-
aries of section 26, township 10, range 7 east, in said
Riley county, and between the Kansas river on the
southwest and the half quarter-section line running
north and south through the southwest quarter of
said section.   The plaintiff claims title through suc-
cessive conveyances from the original patentee, to
whom the land was conveyed by the government on
August 16, 1860.   The original plat of this section
shows that at the time the survey was made the Kan-
sas river ran through said section in a southeasterly
direction, entering it on the west at a point 26.40
chains south of the northwest corner of the section.
The official plat of the original survey shows that a
portion of the section is designated as ''Lot 1,'' and
contains $34\frac{70}{100}$ acres, and that it is bounded on the
north by the northwest quarter of the northwest
quarter of the section, on the east by a line running
north and south through the center of that quarter-
section and extending to the Kansas river on the
southwest quarter of the section, on the south and
southwest by the Kansas river, and on the west by
section 27.   It is admitted by the plaintiff in error
that the plaintiff below established a clear title to
lot 1.   Since the original survey was made and
the patent issued, the course of the river has very
materially changed, so that the land lying south of
the northwest quarter of the section, and between
the Kansas river on the south and southwest, and
the half quarter-section line running north and
south on the east, embraces about $8\frac{1}{4}$ acres, while
under the original survey the land thus bounded
embraced only about $1\frac{1}{4}$ acres and was platted as a
part of lot 1.   The defendant established a perfect
chain of title in himself from the government to lot

2 in said section 26, which contained, as shown by the original survey and official plat thereof, $22\frac{80}{100}$ acres, the half quarter-section line running north and south through the southwest quarter of the section being the boundary line between lots 1 and 2. The defendant claims that, as the course of the river has changed so that its left bank is now south and west of its former location (at the time the original survey and official plat were made), the new land formed by reliction, both on the south and southwest of lot 2, became a part of lot 2. The plaintiff does not controvert this claim as to the accretions on the south of lot 2, (which increases the number of acres in that lot from $22\frac{80}{100}$ to more than 40,) but contends that the new land thus formed which lies west of the half quarter-section line, and adjoining the original southern boundary of lot 1, became a part of lot 1; making the number of acres in that lot $34\frac{98}{100}$, an increase of only $\frac{28}{100}$ of an acre over that shown by the original survey. The trial court sustained the plaintiff in this claim, and in this we see no error. It is said in *New Orleans v. United States*, 10 Pet. 662, that

"The question is well settled at common law that the person whose land is bounded by a stream of water which changes its course gradually by alluvial formations shall still hold the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory, and, as he is also without remedy for his loss in this way, he cannot be held accountable for his gain."

The quantity of land embraced in that part of lot 1 which lies north of the half-section line was, by the changes in the course of the river, diminished about seven acres. As the southern boundary of lot 1, as

31—2 APP.

shown by the official plat of the original survey, was the
Kansas river, that boundary remains unchanged.     In
like manner the boundary line between lots 1 and 2 is
an extension of the half quarter-section line running
north and south to the river, and the owners of these
lots are entitled to the accretions on the left bank of
the river which lie south of the line which originally
formed their southern boundaries, respectively.

The defendant also contends that no part of the
southwest quarter of the section was ever properly in-
cluded in lot 1 ; that the statutes regulating the sur-
vey of public lands forbade such a division of territory,
and that, if the statute were complied with, the half-
section line running east and west should be extended
through to the river, and the triangular tract of land,
embracing about $1\frac{1}{4}$ acres, which lies south of such
line, and which is shown by the plat to be a part of
lot 1, should have been platted as a part of lot 2.  We
are unable to discover any error. in the survey, and
the presumption is that the rules prescribed by law
for the subdivision of the section were followed, both
in making the survey and the official plat thereof.
Section 2397 of the Revised Statutes of the United
States provides that, "in every case of the division of
a quarter-section, the line for the division thereof shall
run north and south."   This rule was complied with
by the surveyor in the division of the southwest quar-
ter of the section, and lot 2 lies wholly east of that
line.    That section further provides, that "in every
case of a division of a half quarter-section, the line
for the division thereof shall run east and west."   This
rule was also followed whenever a subdivision of a
half quarter-section was made.   The divisions of the
several quarter-sections were made by lines running
north and south, and in the division of the half quar-

ter-sections the lines were run east and west, as pre-scribed by the statute.

We think the court properly held that the plaintiff was not precluded from maintaining this action by the bar of the statute of limitations, and as no errors appear in the record, the judgment of the court will be affirmed.

All the Judges concurring.