No. 50,680

STATE OF KANSAS, *Appellee,* v. LEONARDO Q. HERNANDEZ, *Appellant.*

(607 P.2d 452)

Opinion filed March 1, 1980.

*Barry L. Arbuckle,* of Sanborn, Hollingsworth & Arbuckle, of Wichita, argued the cause and was on the brief for the appellant.

*Neal Brady,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Defendant Leonardo Q. Hernandez appeals from his jury trial conviction of first degree murder (K.S.A. 21-3401). In the early morning hours of April 16, 1978, defendant was patronizing the San Luis Club in Wichita. Hector L. Espinoza was also present at the club. The two men had a history of personal conflicts with each other, including physical violence. At approximately 2:00 a.m. the men engaged in another alterca-

tion. Defendant left shortly thereafter. Thirty to forty minutes later defendant, now armed with a .38 caliber handgun, returned to the club, walked over to the table where Espinoza was seated, and fired four shots into Espinoza, who died almost immediately thereafter. Additional details will be supplied where necessary for the determination of the three issues raised on appeal.

ISSUE NO. 1:  Did the district court err in allowing the deposition of Rudolpho Perez to be read to the jury?

Rudolpho Perez was also a patron of the San Luis Club at the time of the shooting and was standing within a few feet of defendant when the shooting commenced. He grabbed defendant, wrestled him to the ground, pinned defendant's arms behind his back, took possession of the gun, held defendant until the police arrived, and gave an on-the-scene statement to the police. Within a day or two Perez contacted the police and advised them that he had been threatened in relation to the case. The police also learned that Perez was a Mexican national illegally in this country, and that his legal name was Sergio Gallardo. On May 1, 1978, concerned by the threats made to Perez and his possible deportation, the State caused a material witness bond to be set for Perez. He was unable to make the bond and was placed in a jail (different from that which was housing defendant). On May 9, 1978, the State filed the following motion:

"Comes now the State of Kansas by and through its attorney, James D. Turner, Assistant District Attorney, and moves this Honorable Court for an Order that the testimony of one Sergio Gallardo be taken by deposition at 11:00 A.M. on May 10, 1978.

"In support thereof, the Movant alleges that on or about 2:00 A.M. on April 16, 1978, Sergio Gallardo was present at the San Luis Club at 2255 N. Broadway in Wichita, Sedgwick County, Kansas; that he observed Leonardo Q. Hernandez shoot and kill Hector L. Espinoza; that he took possession of the handgun used in the shooting and kept Mr. Hernandez from leaving until the police arrived some 10 to 15 minutes later; that he turned the handgun over to the police and gave an interview describing what he had observed and done; that Mr. Gallardo's testimony is material in the First Degree Murder Case No. 78CR721 against Leonardo Q. Hernandez.

"That Sergio Gallardo is a citizen of Mexico and is illegally present in the United States; that the U. S. Department of Immigration is aware of this situation and plans to deport Mr. Gallardo if he is released from the $5,000.00 material witness bond which is presently securing his custody; that Mr. Gallardo has agreed to return voluntarily which promise is reinforced by his past cooperation with law enforcement authorities; that despite his promise, Mr. Gallardo may be prevented from attending because there have [been] threats on his life from another illegal alien concerning his testimony in this case."

The court granted the motion and the deposition was taken on May 10, 1978, with both defendant and defendant's counsel present. Perez was thoroughly cross-examined by defense counsel. Preliminary hearing was had on May 18, 1978, and Perez was apparently present but was not called to testify. The State secured a temporary work permit for Perez (valid through October 31, 1978) and sought authorization for Perez to remain longer within this country. On June 6, 1978, the material witness bond was released and Perez went to work on a Reno County farm under the monitorship of the State. Perez promised to be present for the September 5, 1978, trial and had been fully cooperative throughout. The State continued to seek extension of the time Perez could remain in this country and had contact with Perez. On or about September 1, 1978, the State learned that all efforts in this regard had failed and that October 31, 1978, would be the last day Perez could remain in this country. This information was imparted to Perez on the same date so that he could start winding up his affairs and be advised of what to expect. Perez left for parts unknown shortly thereafter, but the State was not so advised until September 6.

The State then sought leave to introduce the deposition of Perez and such leave was granted, over defendant's objection. The deposition had been taken pursuant to K.S.A. 22-3211, which provides:

"(1) If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an information or indictment may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place.

"(2) If a witness is committed for failure to give bond to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may order that his deposition be taken. After the deposition has been subscribed the court may discharge the witness.

"(3) The prosecuting attorney may apply to the court for an order authorizing him to take the deposition of any witness for any of the reasons and subject to the limitations stated in subsection (1). Upon the filing of such application, the court shall set the matter for hearing and shall make an order requiring the defendant to be present at such hearing. If, upon hearing, the court determines that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to prevent a failure

of justice the court may authorize the prosecuting attorney to take the deposition of such witness in the county where the information or indictment has been filed.

"(4)   The party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined. On motion of a party upon whom the notice is served, the court for cause shown may extend or shorten the time.

"(5)   A deposition shall be taken in the manner provided in civil actions. The court upon request of the defendant may direct that a deposition be taken on written interrogatories in the manner provided in civil actions.

"(6)   In every instance in which the court authorizes the taking of a deposition, other than a deposition upon written interrogatories, the court shall make a concurrent order requiring that the defendant be present when the deposition is taken. If it appears that the presence of the defendant may be coercive to the witness whose deposition is to be taken, the court shall order that the deposition be taken before a judge.

"(7)   At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears:

"(a)   That the witness is dead; or     ˂

"(b)   That the witness is out of the state of Kansas and his appearance cannot be obtained, unless it appears that the absence of the witness was procured by the party offering the deposition; or

"(c)   That the witness is unable to attend or testify because of sickness or infirmity; or

"(d)   That the party offering the deposition has been unable to procure the attendance of the witness by subpoena or other process.

"Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require him to offer all of it which is relevant to the part offered and any party may offer other parts.

"(8)   Objections to receiving in evidence a deposition or part thereof may be made as provided in civil actions."   ·

Defendant contends the trial court erred in allowing the deposition of Perez to be read to the jury. No challenge is or was made to the propriety of the order directing the deposition to be taken, and the order was clearly appropriate under the circumstances. No objection to the taking, time, or place of the deposition was or is asserted. Likewise, no challenge is made to the validity of the statute which authorized the taking of the deposition (K.S.A. 22-3211). We are confronted only with the use of the deposition at trial (K.S.A. 22-3211[7], particularly [b] and [d]). Defendant challenges the use on the grounds that the absence of Perez was occasioned by negligence or bad faith on the part of the State, the specific wrongful conduct being the September 1 conversation in

which Perez was told that efforts to extend his stay beyond October 31, 1978, had terminated unsuccessfully. Additionally, the use of the deposition is challenged on the basis that the Perez subpoena was addressed to his old Wichita address when in fact he was living in Reno County.

K.S.A. 22-3211(7) provides the deposition may be used if it appears:

"(b)   That the witness is out of the state of Kansas and his appearance cannot be obtained, unless it appears that the absence of the witness was procured by the party offering the deposition; or

.  .  .  .

"(d)   That the party offering the deposition has been unable to procure the attendance of the witness by subpoena or other process."

The subsections are in the disjunctive—the State need show only one of the conditions precedent exists. Under the circumstances there was certainly a fair presumption that Perez was out of the state. Did the State procure his absence? We think not. "Procure" is defined by Black's Law Dictionary 1373 (4th ed. rev. 1968), as "[t]o initiate a proceeding; to cause a thing to be done; to instigate; to contrive, bring about, effect, or cause." For the absence of a witness to have been "procured" by a party there must be a showing that the party collusively instigated or induced the witness to absent himself. See *Weiss v. Weiner,* 10 F.R.D. 387, 388 (D. Md. 1950); and *Kono v. Auer,* 51 Hawaii 273, 276, 458 P.2d 661 (1969). The State was working with a very cooperative witness in an effort to assist him in remaining in this country past October 31, 1978. The fact the State in good faith advised Perez on September 1 that its efforts had been futile, does not constitute procuring the witness's absence, although, when viewed in retrospect, such information may have added to the witness's existing reasons for absenting himself. This is especially true where in the same conversation Perez promised to appear at the trial which was just a few days hence.

Defendant relies heavily on *Motes v. United States,* 178 U.S. 458, 44 L.Ed. 1150, 20 S.Ct. 993 (1900), which involved the use of preliminary hearing testimony of a former codefendant, now State's witness, who absconded from the prosecution's custody on the day of trial under highly suspicious circumstances. The court in *Motes* held the testimony should not have been allowed by virtue of the prosecution's negligent acts. Negligence is not synonymous with procuring. In order for negligence to come

within the meaning of "procure" the complained of activity has to reach the level of collusive instigation or inducement. There is no showing that the State desired the absence of the witness and acted directly or indirectly to obtain a desired absence.

Defendant further contends the State failed to meet the requirement of K.S.A. 22-3211(7)(d) by not issuing a subpoena to Perez at his Reno County residence (subpoena was issued to his old Wichita address). As previously stated, 22-3211(7)(b) and (d) are in the disjunctive. Nevertheless, the State was in close contact with the witness and had placed him on the Reno County farm with its owner as supervisor. On September 1 the witness assured the State he would be present when needed at the trial a few days hence. After the witness absconded the subpoena would have been a futile act. An earlier subpoena, under the circumstances, would not have altered the subsequent events. The State was already monitoring the witness's activities and had no reason to anticipate his last minute absence.

The points raised under Issue No. 1 have been considered and found to be without merit.

Issue No. 2:   Did the absence of Perez and the reading of his deposition to the jury deny defendant his right of confrontation and his right to effective counsel?

This issue is closely related to the first issue. Defendant's counsel was appointed on April 27, 1978. The deposition of Perez was taken on May 10, 1978. The preliminary hearing was on May 18, 1978. The coroner's testimony indicated that three bullets lodged in the victim and a fourth grazed the victim's arm; further, that two of the shots caused fatal wounds. At trial defendant's counsel presented a theory that the two nonlethal shots were the first shots fired; further, that the two lethal shots were fired while Perez was struggling with defendant, and that the fatal shots were fired when defendant did not have complete control of the gun. Defendant now claims he was denied effective assistance of counsel by virtue of the Perez deposition being taken prior to development of this defense theory and the lack of opportunity to cross-examine Perez with this theory in mind.

The deposition herein was taken pursuant to K.S.A. 22-3211, which by its very nature presupposes a strong possibility that the deposition may be introduced at trial in lieu of the witness. The purpose of taking a deposition pursuant to K.S.A. 22-3211 is to

perpetuate testimony. *State v. Steward,* 219 Kan. 256, 547 P.2d 773 (1976). Counsel must proceed accordingly. Testimony at preliminary hearings is not taken under comparable circumstances. Depositions to preserve testimony in criminal proceedings are rarely taken and little case law has developed. They stand in a different category from prior testimony from preliminary hearings which, if admissible, come in through K.S.A. 60-460(*c*).

There is no claim that defendant did not have effective assistance of counsel at the time the deposition was taken. The claims of ineffective counsel and lack of confrontation arise from the combination of two subsequent events—a change of theory of defense plus the absence of Perez. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells. *Schoonover v. State,* 2 Kan. App. 481, Syl. ¶4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978). Defense counsel's cross-examination in the deposition was carefully and capably done. Wisdom gained through hindsight cannot be used to gauge effectiveness of counsel. In retrospect, the possibility that some strategy or procedure, different from that used by the accused's lawyer, might have brought about better results for the accused, is wholly insufficient to sustain a claim of ineffective assistance of counsel. *State v. Pencek,* 224 Kan. 725, Syl. ¶4, 585 P.2d 1052 (1978).

Defendant's claim of violation of his constitutional right of confrontation of the witness testifying against him is equally without merit. Even if the Perez testimony had come from the preliminary hearing rather than by deposition it would have been admissible under the facts herein, applying the rules as set forth in *State v. Alderdice,* 221 Kan. 684, 561 P.2d 845 (1977). Perez had been extremely cooperative with law enforcement officers. The only way his appearance could have been guaranteed would have been to keep him in jail from the date of the homicide (April 16) through trial (September 12), which would have been highly inappropriate under the existing circumstances. Additionally, we have reviewed the trial transcript carefully and note that the primary thrust of the theory of defense was that defendant was acting in self-defense. In closing argument, defendant's counsel argued self-defense with the theory that the fatal shots were fired while Perez was grappling with defendant. Also, in his closing

argument, he urged the theory that defendant did not intend to kill the deceased and that the fatal shots were not aimed shots. In so arguing, defense counsel relied heavily on the Perez deposition.

All points raised in Issue No. 2 have been carefully considered and found to be without merit.

ISSUE NO. 3: Did the trial court err in denying defendant's motion for funds for the transportation from Arizona of a witness who was in federal custody?

The witness involved in this issue was Jacob Galavez Sifuentes. He was also a patron of the San Luis Club on the night in question (along with almost 100 others). Sifuentes was taken into custody sometime after the events herein to await transfer by federal authorities to face federal charges in Arizona. On July 27, 1978, his deposition was taken in the Sedgwick County jail. The record is bare of any court proceedings pursuant to K.S.A. 22-3211 for the taking of Sifuentes' deposition, but the deposition was taken by defendant, with the State cross-examining. No issue is made as to the procedure involved. At the time of the trial the witness was in federal custody in Arizona.

The thrust of Sifuentes' testimony was that the deceased had threatened defendant earlier in the evening and it was adduced to support the self-defense theory.

On August 24, 1978, defendant filed the following motion:

"Comes now the defendant, Leonardo Hernandez, by and through his attorney, Barry L. Arbuckle, and moves the Court for an order pursuant to K.S.A. 22-4507 and K.S.A. 22-4508, advancing funds to the U. S. Government to insure the appearance and testimony of the witness Jacob Galavez [Sifuentes] at the defendant's trial. In support of said motion defendant informs the Court of the following:

"1. The defendant is charged with the State's most serious offense, the first degree murder of one Hector Espinosa.

"2. The witness, Jacob Galavez, is currently a prisoner in the custody of the U. S. Marshal in Phoenix, Arizona, awaiting disposition in Federal Court on a drug charge. Defendant's counsel has filed a Writ of Habeas Corpus Ad Testificandum to secure Jacob Galavez's presence.

"3. The witness, Jacob Galavez, was present at the club in Wichita when the homicide took place and actually witnessed an altercation between the defendant and deceased Hector Espinosa shortly before the shooting.

"4. The witness, Jacob Galavez's testimony is crucial to the defendant's defense of self defense or would at least corroborate a killing in the heat of passion (manslaughter) instead of first degree murder.

"5. The witness, Jacob Galavez, has no prior felony convictions affecting his credibility and would make a very credible witness being much more effective in person than through his deposition transcript.

"6. The defendant had been drinking for approximately twelve (12) hours before the shooting and therefore his recollection of the events leading up to the shooting is significantly impaired and therefore he is hampered in effectively describing his defense of self defense.

"7. Counsel for the defendant has been in close contact with the U. S. Marshal's Office in Wichita, Kansas, and has been told by Deputy Marshal Ron Evans that the cost would be approximately $3,000.00 for Jacob Galavez's presence for two (2) days in Wichita, Kansas."

The motion was heard at the beginning of the trial (September 5, 1978) and defense counsel stated:

"Your Honor, I have expressed in my motion the reason, the specific reason I think Mr. Galavez [Sifuentes] should be returned, and I do know that, in talking with Mr. Hernandez, that is his personal wish, also. I don't know what else to add other than to say I think Mr. Galavez is a matter of strategy and trial tactics, and would make a good witness, and I think it would be to Mr. Hernandez' advantage to have him here personally, because I don't know that the instruction will be followed by the Jury. I think he makes a good witness, and the impact would be better if he were here personally, and we would make that request here. At that time the only reason the deposition was taken was that I was afraid this would happen, and therefore took the deposition. We would ask the Court to return him. I think we can have him here probably in a couple days, if the funds were released."

The motion was overruled.

Defendant's brief states he "filed a Writ of Habeas Corpus Ad Testificandum in the Kansas District Court." We assume he means the United States District Court for the District of Kansas, but this is unclear. There is no allegation that the writ was acted upon. Defendant cites K.S.A. 22-4209, which provides:

"The order to the witness and to the person having custody of the witness shall provide for the return of the witness at the conclusion of his testimony, proper safeguards on his custody, and proper financial reimbursement or prepayment by the requesting jurisdiction for all expenses incurred in the production and return of the witness, and may prescribe such other conditions as the judge thinks proper or necessary. The order shall not become effective until the judge of the state requesting the witness enters an order directing compliance with the conditions prescribed."

The above statute is a part of the Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act (K.S.A. 22-4207 *et seq.*). There was no showing of any effort to comply with the provisions of the act or that said act applies to federal prisoners.

Clearly, the witness was beyond the jurisdiction of the district court. Although the deposition was not taken in accordance with K.S.A. 22-3211, it appears from defense counsel's arguments to the trial court (above quoted) that it was his intent to perpetuate testimony by the taking of the deposition. The deposition was read to the jury.

Defendant contends his right to compulsory process was violated and he was thereby denied a fair trial. We do not agree. Under the circumstances herein we have no hesitancy in concluding that the trial court did not abuse its discretion in denying defendant's motion for funds.

All points raised, whether or not specifically enumerated in this opinion, have been considered and found to be without merit.

The judgment is affirmed.