Walter MYRICK, Petitioner-Appellant,

v.

Herb MASCHNER and the Attorney General of the State of Kansas, Respondents-Appellees.

Nos. 85–1958, 85–2618.

United States Court of Appeals, Tenth Circuit.

Aug. 29, 1986.

David J. Gottlieb (Lisa Nathanson with him on the brief), of Legal Services for Prisoners, Inc., Lawrence, Kan., for petitioner-appellant.

Gerald R. Kuckelman, Asst. Atty. Gen. (Robert T. Stephan, Atty. Gen., with him on the brief), of Topeka, Kan., for respondents-appellees.

Before LOGAN, TIMBERS,* and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal following a denial of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. In Kansas state court, the petitioner, Walter Myrick, was convicted of premeditated and felony murder, aggravated kidnapping, and aggravated possession of a weapon. After exhausting his state remedies, he sought a writ of habeas corpus in the United States District Court for the District of Kansas, contending a jury instruction deprived him of his right to a fair trial and contravened the rule of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The challenged instruction effectively shifted the burden of proving the element of specific intent from the prosecution to the defense. The district court ultimately concluded that although the instruction was constitutionally deficient, the error was harmless. Upon consideration of the record in its entirety, we are satisfied the petitioner's guilt was established beyond a reasonable doubt at a fair and impartial trial and the instruction had no bearing on the outcome of the case. We therefore agree with the district court that the giving of the instruction was harmless error. Petitioner raises two additional issues in which we find no merit; therefore, we affirm the denial of a writ of habeas corpus.

---

* Honorable William H. Timbers, United States Circuit Judge for the Second Circuit, sitting by designation.

## I.

The crimes of which petitioner was convicted were committed while he was traveling through Kansas with two companions, Stanford Swain and Jimmy Nelms. Petitioner was driving Nelms' car with the latter asleep in the back seat. During the postdawn hour of May 24, 1978, the vehicle was flagged down by Trooper Conroy O'Brien of the Kansas Highway Patrol. Petitioner pulled to the side of the road, and at the officer's request, petitioner accompanied O'Brien to the latter's car, where the two men sat while O'Brien proceeded to prepare a citation for speeding. Shortly after petitioner's departure from Nelms' car, Nelms awoke, surveyed the scene, and without explanation, announced to Swain that he had to kill O'Brien.

Nelms walked back to the patrol car, and at gunpoint, ordered the officer to get out. Petitioner also stepped out and met Nelms and O'Brien at the rear of the police vehicle. Nelms then ordered Trooper O'Brien to proceed to a ditch where, with petitioner at his side, Nelms shot the trooper twice in the back of the head.

Petitioner and Nelms then returned to their car, taking with them O'Brien's revolver and ticket book. The three fled the scene with Nelms at the wheel. Sometime shortly thereafter, the trio was spotted by another trooper, Charles Smith, who chased their car into an open field. As Nelms swung his car about in an attempt to elude the trooper's car, Swain jumped out and ran. At the same time, Nelms and petitioner began firing pistols at Smith, who blindly returned fire while dodging behind the dashboard of his car.[1] After a three-minute gun battle, first petitioner and then Nelms ran off in the general direction taken by Swain. A short time thereafter, the three were captured in the field.

Petitioner and Nelms were tried together upon the state's motion for consolidation.[2] Swain pled to lesser offenses and testified against his former companions, implicating Nelms as the principal perpetrator and petitioner as his accessory. While Nelms testified and attempted to cast petitioner and Swain in the role of principals and himself in the role of an innocent nonparticipant, petitioner neither testified nor presented any evidence.[3] Statements made to officers by petitioner were introduced by Nelms as part of his defense. In those statements, petitioner made admissions generally dovetailing with the testimony of Swain and painting petitioner as a nonactor in the killing of Trooper O'Brien.

Other than Swain's testimony, the state relied principally upon circumstantial evidence to prove petitioner's guilt. It was established that petitioner had possession of O'Brien's ticket book which contained a notation that could have linked petitioner to O'Brien; that petitioner willingly joined Nelms in leading Trooper O'Brien to the place where he was shot; that petitioner stood close-by and silently watched the shooting; that petitioner threw Trooper O'Brien's service revolver and ticket book from the car during their attempted flight; and that petitioner joined Nelms in the gun battle with Trooper Smith.

## II.

As part of the general charge to the jury, the trial court instructed:

There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This

---

1. Trooper Smith did not actually see petitioner fire his gun, but he did see petitioner point a revolver at him, and he heard the hammer click six times. It was later established that the revolver had six empty cartridges in the cylinder and that the hammer had struck each cartridge more than once, supporting the inference that petitioner actually fired at the officer and attempted to do so after the gun was empty.

2. The denial of petitioner's motion for severance was considered on appeal and rejected by the Kansas Supreme Court. *State v. Myrick*, 228 Kan. 406, 616 P.2d 1066 (1980).

3. Petitioner's defense strategy was to buttress Swain's veracity, thereby demonstrating that petitioner was merely a bystander and that Nelms' testimony was false. Petitioner admits that his decision not to testify was contrary to the advice of his trial counsel.

presumption is overcome if you are persuaded by the evidence that the contrary is true.

Petitioner contends this instruction was erroneous under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In *Sandstrom,* the Supreme Court held an instruction of the type given in this case unconstitutionally shifted the burden of proving intent to the accused, resulting in a denial of due process. In a later case, the Court held that even though an instruction of this type might provide that the presumption of intent could be overcome by other evidence, the deprivation of due process persists. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). We followed *Franklin* in *Wiley v. Rayl,* 767 F.2d 679 (10th Cir.1985), and concluded that a Kansas instruction identical to that employed in this case contravened due process. Accordingly, it is clear that the instant instruction suffers the same deficiency. That does not end the inquiry, however.

The respondent argues, and the district court held, despite the impropriety of the instruction, it was of no harmful consequence to the ultimate fairness of petitioner's trial.[4] While there has been concern whether *Sandstrom* error could ever be harmless, that concern has been dissipated by *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).[5]

In *Rose,* the Supreme Court applied an ordinary harmless error analysis to a presumptive intent instruction similar to that found in the instant case. The Court drew a distinction between those trial errors which, by their very nature, render the proceeding fundamentally unfair[6] and those errors which do not affect the ultimate fairness of the fact-finding process, concluding the rationale can even apply to cases involving instructions on intent. Recalling *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court reemphasized the principle that even "constitutional errors" may be harmless if, beyond a reasonable doubt, they did not contribute to the verdict. *Rose,* 106 S.Ct. at 3105. The Court added:

> Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis.... Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.

*Rose,* 106 S.Ct. at 3106–7.

Consequently, the harmless error analysis that we now must undertake requires our viewing the entire record to determine whether the instruction which theoretically *could* have altered the verdict of the jury actually had such effect as a practical reality.[7]

Petitioner argues, in substance, that the evidence of his intent was not clear, that it was subject to question, and that it was far from overwhelming. In this argument, he compares the nature of the evidence against him with the evidence against Nelms. In that context, the argument generates appeal, but it does not address the real question we face.

■ It was the prosecution's theory that petitioner was an accessory who, under

---

**4.** The district court erroneously held that intent was not at issue in the charged offenses. While we do not agree with this part of the court's order, we hold that giving the instruction was nevertheless harmless.

**5.** *See also Shaw v. Johnson,* 786 F.2d 993 (10th Cir.1986).

**6.** *Rose,* 106 S.Ct. at 3106 (citing constitutional errors such as deprivation of counsel, *Gideon v.*

*Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); use of a coerced confession, *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); and a biased judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); which are not subject to harmless error analysis).

**7.** *Rose,* 106 S.Ct. at 3108 n. 11.

Kansas law, is guilty as a principal.[8] Because the state did not contend petitioner was the principal, his intent became an issue for the jury only within the context of deciding whether he intentionally promoted or assisted in the commission of the crime [9] and not whether he intended to commit the crime itself. We perceive the nature and quality of the requisite intent here to be significantly different than the specific intent necessary to support a conviction of the substantive offenses. Indeed, in accordance with Kansas law, the trial court instructed the jury that in the context of the instructions, the word "intentionally" meant: "[C]onduct that is purposeful and wilful and not accidental."[10]

The jury was simply required to find petitioner performed some act to purposefully and willfully aid Nelms in the commission of kidnapping and murder. As already noted, that evidence was established, and petitioner did not provide contrary evidence requiring the jury to choose between contradictory facts. Petitioner, while conceding his presence at the killing, argued to the jury that he did not intend to and did not in fact assist the triggerman. However, our review of the record indicates that the evidence of the petitioner's intent to aid Nelms in the commission of the substantive crimes went beyond mere presence at the scene and was clear beyond a reasonable doubt. From the moment he stepped from Trooper O'Brien's car until he fled in the field, petitioner acted to aid Nelms in the commission of the offenses and in the attempt to avoid detection and apprehension. Those acts were sufficient to establish his guilt beyond a reasonable doubt, and they were unequivocal; that is, they could only have been interpreted as acts in aid of Nelms. We therefore conclude the improper instruction did not have a practical effect on the determination of the jury, and any error arising from the giving of the instruction was harmless.

### III.

Petitioner contends that his appointed trial counsel's association with Kansas highway patrolmen and his prior representation of at least one prosecution witness created a conflict of interest resulting in a violation of petitioner's right to effective assistance of counsel. Petitioner asserts this alleged conflict adversely affected his lawyer's performance in several ways.

Petitioner claims his attorney's bias caused him to waive cross-examination of a prosecution witness, Trooper Wickham,[11]

8. In explanation of this theory, the trial court instructed the jury:

A person is criminally responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime. A person who so aids, assists or promotes another to commit the crime is guilty of the crime charged regardless of the amount of his participation.

You are therefore instructed in this case that if you find beyond a reasonable doubt that either defendant intentionally aided, assisted or promoted the other in the commission of the crime or crimes charged, as elsewhere defined in these instructions, then he, individually, is guilty of such crimes as though he, by himself, without assistance, committed those crimes.

Even though the verdict form does not so indicate, it is clear the jury accepted that theory. To return a verdict of guilty against either or both defendants, the jury was faced with two choices: either the jury believed the story told by Nelms, which would have required his acquittal; or it believed the story told by Swain, which would have required Nelms' conviction as a principal. Since the jury convicted Nelms, it follows the jury determined he was the principal perpetrator and that petitioner was his accessory.

9. "A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime." Kan.Stat.Ann. § 21–3205(1) (1981). *See also State v. Van Pham*, 234 Kan. 649, 675 P.2d 848 (1984); *State v. Payton*, 229 Kan. 106, 622 P.2d 651 (1981); *State v. McDaniel*, 228 Kan. 172, 612 P.2d 1231 (1980).

10. *See* Kan.Stat.Ann. § 21–3201(2) (1981).

11. On June 16, 1981, during arguments on Myrick's motion in the state court for a full evidentiary hearing on the postconviction relief proceeding, the following transpired:

THE COURT [To trial counsel]: ... [Y]ou said you may have represented Trooper Wick-

whose testimony was allegedly critical to the issue of petitioner's conduct. He argues the relationship between counsel and defendant was "poisoned," thus crippling counsel's ability to advise his client. He claims these defalcations were exacerbated because he learned of his attorney's "conflict" from jail inmates and not from counsel himself. Finally, petitioner contends his trial counsel's bias resulted in his making only a "half-hearted" summation to the jury.[12]

We do not minimize the claim of conflict of interest, yet, once made, it lacks significant substance in this instance. In retrospect, it may have been unwise for defense counsel to have failed to tell petitioner he had represented state troopers. Yet, the evidence indicates counsel believed this representation was not significant,[13] and even though the consequence of the failure to disclose may have been animosity between lawyer and client, we can find no indication in the record that the absence of disclosure caused defense counsel to fail in his duty to represent the petitioner.

Unlike *United States v. Winkle*, 722 F.2d 605 (10th Cir.1983), this is not a case in which the record indicates that counsel was actually inhibited from acting on behalf of a defendant because of a conflict of interest. Here, we have only bald assertions that conflicts adversely influenced judgments exercised during trial. However, there is no trial in which even experienced counsel is entirely satisfied with all the tactics employed in the heat of battle. Indeed, the blessing of perfect hindsight frequently discloses avenues which should have been explored or questions that should have been left unasked. No two trial lawyers approach the same case from the same perspective, nor do they always develop the same trial strategy; thus, what to one appears to be sound, may to another appear unwise. A reviewing court must always be alert to distinctions between disagreement over tactic and valid complaints of inadequate counsel.

The district court examined petitioner's claims of conflict and resultant inadequacy of counsel and determined they were lacking in substance.[14] The court held that

---

ham, but you don't think you represented him during the period of time that you represented Myrick. Is that it?
A: That's my recollection, yes. It was not anything really. He went to move his mobile home from one part of town to another part. I intervened on his behalf with the city inspector to get it moved. We were never to accomplish that goal, and that was it. I think that happened quite a bit of time before Trooper O'Brien was shot.

**12.** Petitioner's argument that the summation of counsel was "half-hearted" can be viewed in many lights. There is no doubt that some can read the sterile record and opine counsel might have been more eloquent, or that he might have stressed points in another way. Yet, taking the summation in its entirety, judging it in the context of the summations of the other attorneys, and considering the facts in evidence with which counsel had to deal, we cannot agree the summation was "half-hearted."

**13.** In regard to the establishment of the "Troopers Association," counsel testified:
Well, my recollection is that I was at the office late in the evening, 8:30 or 9:00 o'clock at night [approximately six months prior to being appointed to represent Myrick], and I think Jerry Nelson called me and said would you meet me at Happy Days for a cup of

coffee. And my recollection is that I went out there and we just visited about whether or not the troopers would respond to the opportunity to participate in an association. And in my letter ... I related that I didn't think that there was enough interest, that it wouldn't work.
Q: So when you left that meeting this was—to you it was an idea, but it didn't look like anything was going to even gel on the association.
A: No, I'd—I'd completely forgotten it, I think.
Regarding his representation of "twenty-seven" officers, he stated: "I provided legal services to representatives of the El Dorado Department of Public Safety; representatives or officers of the Butler County Sheriff's Office and officers of the Kansas Highway Patrol during [the period he represented petitioner]."
On the grounds of privilege, he refused to identify the individuals or the nature of the services he rendered.

**14.** For example, petitioner asserts counsel waived cross-examination of Trooper Wickham. Petitioner claims cross-examination was important because Wickham's testimony dealt with whether petitioner was just a bystander or an accessory to Nelms. To be sure, that characterization of the testimony is apt, but in context it

many of the alleged failures of counsel were actually the exercise of sound or justified trial tactics. We, too, have reviewed the record with these allegations in mind, and we cannot find the district court's conclusions clearly erroneous. Petitioner simply has not shown that the alleged conflict in reality interfered with the effectiveness of his trial counsel.

The petitioner has also failed to establish his Sixth Amendment claims apart from the conflict of interest allegation. The standard by which allegations of the ineffectiveness of counsel are to be measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We are required to determine whether there was a breakdown in the adversarial system of justice caused by the acts or omissions of counsel and whether we can now say that absent those acts or omissions, the outcome of the trial would have been different. Our review of the record discloses that the circumstances complained of by petitioner did not have a bearing on the outcome of the trial.

## IV.

Petitioner claims the district court erred in failing to grant him an evidentiary hearing on the issue of his trial counsel's alleged conflict of interest. He argues the court should not have relied upon the postconviction proceeding record in the state court because the hearing at which that record was made was "neither full nor fair."

Petitioner acknowledges the state court did conduct an inquiry into the issue of conflict of interest, and he admits that during the inquiry trial counsel disclosed his representation of law enforcement officers. The only imperfections in the state process

claimed by petitioner are grounded upon his assertions the state court did not compel trial counsel's testimony under oath and failed to allow petitioner to testify.

■ The substance of the argument is shallow. First, the record does not bear out the contention that trial counsel was not examined under oath. As part of the state postconviction proceedings, a deposition of trial counsel and several other witnesses was taken on May 22, 1981. The transcript of that deposition indicates that all witnesses, specifically trial counsel, were sworn.[15] The state court considered that transcript in denying postconviction relief. Second, petitioner does not suggest how his trial counsel's testimony could have been expanded upon in another hearing before the state court. At the deposition, petitioner's present counsel thoroughly questioned trial counsel on the whole range of issues bearing upon the adequacy of his presentation and the alleged conflict of interest. While trial counsel occasionally bristled over some of the questions, he nonetheless gave candid answers to all inquiries. On the state of the record, we find no substance to the claim the state hearing was not "full and fair" because the state court did not require counsel to be sworn.

In like fashion, the contention that the state court "refused" to let petitioner testify is not completely accurate. The state judge had before him petitioner's affidavit in which he made extensive allegations in conflict with the testimony of his trial counsel. Although the record is clear that the state judge read and took that affidavit into consideration, petitioner now argues he should have been allowed to testify to those same circumstances.

■ Petitioner does not state what additional evidence would have been provided

---

was only a small part of the officer's entire testimony. Moreover, those questions petitioner now says should have been directed to Wickham were answered by his testimony on direct and are so evident that the jury readily could have perceived them without cross-examination.

**15.** During arguments on whether to hold an evidentiary hearing to assess Myrick's claims of

ineffective assistance of counsel, the state court asked original trial counsel to recall certain parts of his deposition testimony. The request was informal and the answers were not given under oath. Nevertheless, trial counsel's responses were consistent with his earlier testimony given under oath, and no objection was made to this procedure.

through his testimony. He asserts it would have shown the contradiction between his version of the facts and that of his counsel, but that contradiction was clear without oral testimony. Moreover, the contradiction, at best, goes to the details of the relationship between petitioner and his attorney and not to the issue of whether a conflict of interest inhibited counsel from giving his client constitutionally adequate representation. More importantly, petitioner does not state what additional evidence bearing upon the issue of the adequacy of his counsel he would have presented to the federal district court if it had granted an evidentiary hearing.

A federal district court conducting a proceeding under 28 U.S.C. § 2254 is bound by factual determinations made by a state court following a full and fair hearing. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Indeed, any such determination is entitled to a presumption of correctness unless the habeas applicant can establish the existence of one or more of seven factors outlined in § 2254(d). In the absence of any of those factors, no evidentiary hearing is required in the federal court.

There are no specific procedural requirements that must be satisfied as a condition of a full and fair hearing within the context of § 2254(d). *Sumner*, 449 U.S. at 546, 101 S.Ct. at 768. It is only necessary that the hearing be "evidenced by a written finding, written opinion, or other reliable and adequate written indicia." *Id.;* 28 U.S.C. § 2254(d).

In this case, the state court allowed petitioner's counsel to depose witnesses whose testimony was pertinent to the constitutional issues later raised in his § 2254 petition. Affidavits in support of postconviction relief were filed and considered. The record on petitioner's appeal to the Kansas Supreme Court was likewise considered by the state judge who also listened to oral arguments at which counsel for the petitioner argued at length. After considering the depositions, affidavits, arguments, and record, the state judge made findings and conclusions upon the record resulting in the denial of postconviction relief. We conclude these proceedings satisfied the requirements of § 2254(d), and the district court correctly decided a further evidentiary hearing was not required in this case.

AFFIRMED.